**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

WESLEY A. TAYLOR,                )
                                 )
              Petitioner,        )
                                 )
    v.                           )          **Case No. CIV-16-462-RAW-KEW**
                                 )
JIMMY MARTIN, Warden,            )
                                 )
              Respondent.        )

## OPINION AND ORDER

This matter is before the court on Petitioner's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  [Doc. 1].  Petitioner, a *pro se* prisoner in the custody of the Oklahoma Department of Corrections, is currently incarcerated at the North Fork Correctional Center in Sayre, Oklahoma.  Following a jury trial, Petitioner was convicted of one count of sexual abuse of a child under twelve (12), in violation of 21 O.S.Supp.2011, § 843.5(F), in Okfuskee County District Court Case No. CF-2014-60.  He was sentenced to life imprisonment in accordance with the jury's recommendation.

Petitioner is attacking his conviction and sentence and sets forth eight grounds for relief within the § 2254 petition:

    I.     The trial court erred by improperly admitting hearsay evidence.

    II.    Petitioner was fundamentally denied a fair trial by the admission of prejudicial, cumulative evidence and improper bolstering.

    III.   The trial court erred by admitting propensity evidence.

    IV.    Petitioner was denied a fair trial due to prosecutorial misconduct.

    V.     The trial court erred by failing to order a presentence investigation.

    VI.    Petitioner was prejudiced by ineffective assistance of counsel.

    VII.   Cumulative errors deprived Petitioner of a fair trial.

    VIII.  Petitioner's sentence is excessive.

Respondent concedes that the Petitioner has exhausted his state court remedies for the purpose of federal habeas corpus review and that the § 2254 petition is timely filed. [Doc. 8 at 2].[1] The grounds for relief within the § 2254 petition were presented to the Oklahoma Court of Criminal Appeals ("OCCA") on direct appeal.[2] Petitioner did not file an application for post-conviction relief in the state district court.

The following have been submitted for consideration in this matter:

A.    Petitioner's direct appeal brief.

B.    State's brief in Petitioner's direct appeal.

C.    Summary Opinion affirming Petitioner's judgment and sentence.

D.    State court record.

E.    Transcripts.

F.    DVD - State's Exhibit 1.


## Standard of Review

Under the Antiterrorism and Effective Death Penalty Act, federal habeas corpus relief is proper only when the state court adjudication of a claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[1]    This court's record citations refer to the CM/ECF page numbers in the upper right-hand corner of each document.

[2]    Petitioner's § 2254 petition was filed on October 24, 2016. [Doc. 1]. On February 22, 2018, Petitioner filed a "motion to supplement the record on 2254 appeal" in light of *Murphy v. Royal*, 875 F.3d 896 (10th Cir. 2017), *cert. granted*, 138 S.Ct. 2026 (2018). [Doc. 21]. This court denied Petitioner's motion to supplement, explaining that review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits," and that "under the exhaustion requirement of 28 U.S.C. § 2254(b), a habeas petitioner challenging a state conviction must first attempt to present his claim in state court." [Doc. 25]. In the instant case, Petitioner has not exhausted the proposed *Murphy* claim. *Id.*

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).


**Factual Background**

Jolanda Williams and various family members shared a home in Little, Oklahoma, towards the end of 2013. [Doc. 9-3 at 191-93; Doc. 1 at 5]. Others in the home included Ms. Williams' sister, Vita Ledbetter; Ms. Williams's daughter, Randi Nauni, and her husband, Murphy, along with their two children; and Ms. Williams' son, Nathan Nauni, and his two children. *Id.* It was also during this time that Nathan's girlfriend, Precious Severs, and her two children, R.S., a six-year-old, and C.J.S., a three-year-old, moved into the residence. *Id.* at 194.

Precious worked with Nathan at a casino, and often worked a night shift. *Id.* at 193, 195. Ms. Williams regularly took care of R.S. and C.J.S. when Nathan and Precious went to work. *Id.* at 195. Ms. Williams and R.S. bonded during this time and had a great relationship. *Id.* at 194-95.

R.S. occasionally stayed with her grandmother, Rachael Taylor, in Okemah, a city located in Okfuskee County, Oklahoma. [Doc. 9-3 at 196; Doc. 9-4 at 31]. Petitioner, Ms. Taylor's husband, was also present in the home from time to time. [Doc. 9-4 at 40, 44, 136-38]. The child had a close relationship with Ms. Taylor, but at some point, the child no longer wanted to go to her grandmother's residence, and preferred staying with Ms. Williams. [Doc. 9-3 at 196-97; Doc. 9-4 at 21].

Ms. Williams, Ms. Nauni, and Ms. Severs started to notice significant behavioral changes within a few months of the child moving to Ms. Williams' residence. [Doc. 9-3 at 197; Doc. 9-4 at 8, 21-22]. In particular, R.S. was getting in trouble at school and was withdrawn at home, and started playing naughty with other children by taking off their clothing and touching their private areas. [Doc. 9-3 at 198, 207-08; Doc. 9-4 at 9].

Ms. Williams spoke to R.S. multiple times, explaining that the behavior was not appropriate. [Doc. 9-3 at 197-202]. Ms. Severs also told her child that she "wasn't supposed to be playing like that" while under the covers with other kids. [Doc. 9-4 at 24]. Eventually, in an effort to understand why R.S. was acting out, Ms. Williams asked the child "Has anybody ever touched you like that?" [Doc. 9-3 at 202]. R.S. dropped her head for a moment, and then looked up, stating "Yes, they have, Grandma Jo, and it was Alan [the Petitioner]." *Id*. After that, R.S. started crying. *Id*. Ms. Nauni was also present and heard the child's statement about the Petitioner. [Doc. 9-3 at 209; Doc. 9-4 at 10].

R.S. told Ms. Williams that she had been at Ms. Taylor's house and that her grandmother and Petitioner were drinking beer. [Doc. 9-3 at 204]. Later that night, the child was on a pallet next to the bed, near Petitioner, and Petitioner put his hands in the child's panties and started touching the child's vagina. *Id*. at 204-05. The child's grandmother was sleeping on the opposite side of the bed next to the wall. *Id*. at 205. R.S. started crying and said "Grandma." *Id*. The child's grandmother did not wake up, but the Petitioner stopped when R.S. called for her grandmother. *Id*. Ms. Williams did not ask the child whether Petitioner had touched her on more than one occasion, but she did ask "Why didn't you tell somebody?" *Id*. R.S. told Ms. Williams that she did not want "her mom to get mad," and did not want "to make her grandma sad." *Id*. at 206. The child also told Ms. Williams that her grandma usually slept on the side of the bed closest to the pallet, but on that night, Petitioner was sleeping closest to the pallet. *Id*.

Ms. Williams and Ms. Nauni told the child's mother about the abuse when she returned from work. [Doc. 9-4 at 25]. Ms. Severs testified that, once she found out about the abuse, she cried and "didn't know what to do," and "didn't know how to handle it," but knew "[she] had to report it." *Id*.

The following morning, R.S. asked her mother if Ms. Williams and Ms. Nauni had told her about Petitioner, and asked her mother, "Are you mad at me?" *Id*. at 26. Ms. Severs told her child, "No, I'm so proud of you for telling it." *Id*. Ms. Severs then asked, "Baby, will you tell me . . . so I can hear it from you, what happened?" *Id*. At that time, R.S. told her mother that Petitioner touched her "in her private areas." *Id*. R.S. later said "Mama, it would hurt and I would cry." *Id*. at 27.

The child's mother filed a police report and cut off all ties with Petitioner. *Id.* at 30. The child's poor behavior and acting out sexually with other kids stopped after R.S. shared what happened and was no longer around Petitioner. [Doc. 9-3 at 208-09; Doc. 9-4 at 14].

Laurie Mallinson, a child advocate and forensic interviewer, conducted a video recorded forensic interview with R.S. on January 17, 2014. [Doc. 9-4 at 69, 71-72; DVD - State's Exhibit 1]. The child's statements to Ms. Williams, Ms. Nauni, and Ms. Severs were consistent with her interview and testimony at trial. R.S. maintained that Petitioner touched her private spot. [Doc. 9-4 at 85-87, 92; DVD - State's Exhibit 1 at 9:45-10:38, 16:00-22:00]. R.S. explained that Petitioner touched her while she was sleeping on a pallet inside her grandmother's bedroom, where Petitioner and her grandmother were on the bed beside her. [Doc. 9-4 at 88-92; DVD - State's Exhibit 1 at 16:00-22:00]. Petitioner, while lying on the side of the bed closest to the child, reached over and put his hand under her panties and touched her vagina multiple times. [Doc. 9-4 at 91-94, 96].

Okemah Police Officer Jon Owens interviewed Petitioner at the police department. *Id.* at 121. Petitioner indicated to Officer Owens that R.S. was a good kid, and he denied touching the child inappropriately. *Id.* at 123. Petitioner also told the officer that R.S. was there "a lot," referring to the times R.S. would visit her grandmother at the Okemah residence. *Id.* at 123-24. Petitioner could not explain to the officer why R.S. would make up allegations against him, other than "maybe because Precious didn't like him." *Id.* at 123, 126-27. Petitioner confirmed that the child would sleep in the room with Petitioner and Ms. Taylor, and that the couple drank a lot of alcohol during that period of time. *Id.* at 125-27.

Ms. Taylor alleged during the trial that she had heard two different stories and that she wanted to know what happened. *Id.* at 41-42. The child's grandmother told the jury that she would go to bed at the same time as Petitioner, that Petitioner would watch T.V. and that she would go to sleep first, and that she did not know what Petitioner did while she was sleeping. *Id.* at 52. Ms. Taylor explained that she was drinking alcohol and taking sleep medication during the time period, which made her drowsy. *Id.* at 52-53. Ms. Taylor also testified that she slept on the side of the bed closest to the child's pallet when the child stayed overnight, and that she did not remember

R.S. sleeping next to Petitioner, but admitted that "[R.S.] wouldn't lie about it" if the child said otherwise. *Id*. at 44-46, 50-54.

Petitioner took the stand and denied inappropriately touching the child. *Id*. at 143-44, 147, 168, 176. Petitioner, who goes by the name "Alan," explained that he had moved with Ms. Taylor to the house in Okemah in November of 2012, and that he was arrested (on unrelated charges) shortly thereafter. *Id*. at 133-34, 136, 148. Petitioner was apparently in jail from December of 2012 until March of 2013, and following his release, he returned to the home and was living with Ms. Taylor from March of 2013 until June of 2013. *Id*. at 136. At that point, according to Petitioner, the couple had an argument and he moved to Tulsa. *Id*. at 136-37. Then, in October of 2013, he moved back in with Ms. Taylor at the house in Okemah. *Id*. at 137-38. Lastly, in November of 2013, the couple moved to a trailer in Wetumka, a town in neighboring Hughes County, Oklahoma. *Id*. at 138.

Petitioner acknowledged that R.S. would stay throughout the day at the couple's home in Okemah from time to time, and according to Petitioner, the child stayed overnight approximately four times. *Id*. at 139. Other statements from Petitioner were also consistent with the child's story. Notably, Petitioner agreed that on at least one occasion he had slept on the side of the bed closest to the child's pallet, and that Ms. Taylor had fallen asleep before Petitioner. *Id*. at 165. Petitioner was unable to remember the date when he had slept next to the child, but he specifically told the jury that he remembered drinking "maybe four hurricanes" (which he described as beer) that day before sleeping beside R.S. *Id*. at 166-67. At an earlier point in the trial, Petitioner told the jury that he would drink "at least a 12 pack" when the children were present. *Id*. at 160-61.

**Ground I: The trial court erred by improperly admitting hearsay evidence.**

Petitioner claims in Ground I that he "was denied fundamental due process and a fair trial when the State was allowed to introduce hearsay evidence without restraint," explaining that "[u]nder State Statute it is error for the trial court to admit this type of hearsay without holding a reliability and trustworthy hearing mandated by Title 12 O.S.2011 § 2803.1." [Doc. 1 at 10]. In relevant part, 12 O.S.2011, § 2803.1 provides as follows:

A. A statement made by a child who has not attained thirteen (13) years of age . . . which describes . . . any act of sexual contact performed with or on the child . . . by another, is admissible in criminal and juvenile proceedings in the courts in this state if:

1. The court finds, in a hearing conducted outside the presence of the jury, that the time, content and totality of circumstances surrounding the taking of the statement provide sufficient indicia of reliability so as to render it inherently trustworthy. In determining such trustworthiness, the court may consider, among other things, the following factors: the spontaneity and consistent repetition of the statement, the mental state of the declarant, whether the terminology used is unexpected of a child of similar age or of an incapacitated person, and whether a lack of motive to fabricate exists; and

2. The child . . . either:

    (a.)    testifies or is available to testify at the proceedings in open court . . . , or

    (b.)    is unavailable . . . as a witness. When the child . . . is unavailable, such statement may be admitted only if there is a corroborative evidence of the act.

12 O.S.2011, §§ 2803.1(A)(1) and (A)(2). Petitioner acknowledges (within his brief filed with the OCCA) that a hearing was held prior to trial, that several witnesses testified in court, that his motion in limine was denied, and that the State's motion to admit prior statement of child witnesses into evidence was granted. [Doc. 8-1 at 19-20]. Even so, he complains that the trial court failed to state for the record the particular facts and circumstances to support a finding that R.S.'s pre-trial statements were reliable, and that "there is no record of the court determining whether or not R.S. was 'available' or competent to testify." *Id*. at 20. Pointing to a portion of the child's preliminary hearing testimony (regarding whether certain princess stories "really happened"), he argues that the child was not "available" or competent to testify, even if she was physically present, because she "could not distinguish truth from fiction." *Id*. at 18-20.

In response, Respondent claims Ground I should be denied. Respondent claims Petitioner has failed to show that the OCCA's ruling in this case was contrary to, or an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts. [Doc. 8 at 8-9]. Respondent points to several cases and the testimony of R.S. and witnesses, contending that Petitioner does not raise a federal constitutional issue, that Petitioner has instead raised a State law evidentiary claim, and that Petitioner has failed to show the trial court's failure to explain its

decision for admitting R.S.'s statements rendered Petitioner's trial fundamentally unfair. *Id*. at 13-15. Respondent further claims that, "[w]hile Petitioner's questions and R.S.'s answers about Disney characters was somewhat confusing during the preliminary hearing, the entire issue was made clear during trial" when the child denied that the stories really happened. *Id*. at 17.

The OCCA rejected Petitioner's claim on direct appeal, finding as follows:

In Proposition One, Appellant contends that child hearsay statements were erroneously admitted. Appellant made no contemporaneous objection on these grounds at trial, waiving all but plain error. *Simpson v. State*, 1994 OK CR 40, ¶ 2, 876 P.2d 690, 692-93. To obtain relief, he must show a plain and obvious error affected the outcome of the trial. The Court will correct plain error only when it seriously affects the fairness, integrity, or public reputation of judicial proceedings, or otherwise represents a miscarriage of justice. *Hogan v. State*, 2006 OK CR 19, ¶ 38, 139 P.3d 907, 923.

Appellant claims the complaining witness was not competent to testify at trial; and that the court admitted child hearsay without "stat[ing] for the record the particular facts and circumstances supporting [its] findings that such hearsay statements of children are reliable," as required by *F.D.W. v. State*, 2003 OK CR 23, ¶ 5, 80 P.3d 503, 504. We find the court's failure to more particularly state the factual grounds for its conclusions on the child declarant's competency and reliability was, at most, harmless error. The facts supporting the trial court's conclusions are apparent from the existing record. Any error did not seriously affect the fairness, integrity, or public reputation of the proceedings. Proposition One is denied.

*Taylor v. State*, No. F-2014-1015, slip op. at 2 (Okla. Crim. App. Jan. 19, 2016) (unpublished). [Doc. 8-3 at 2].

After carefully reviewing the documents filed herein, this court finds that the OCCA's decision is not an objectively unreasonable determination. The facts supporting the trial court's conclusions were more than adequate from the record.

Prior to the jury trial, the defense filed a motion in limine on October 10, 2014. [Doc. 9-7 at 39-40]. In short, Curt Allen, defense counsel, claimed R.S. was not a competent witness. *Id*. Mr. Allen scrutinized the child's prior testimony at the preliminary hearing (regarding whether certain princess stories "really happened") and argued R.S. was "unable to distinguish truth from fiction." *Id*. at 39. Counsel requested the court to "grant his motion in limine and prohibit the State from offering the testimony of [R.S.]." *Id*. at 40.

On the same date, the State filed a motion to admit prior statements of child witnesses [sic] into evidence. [Doc. 9-7 at 43-45]. The State reported that R.S. had been forensically interviewed by one witness, Ms. Mallinson, and that the child had disclosed allegations of inappropriate sexual contact by Petitioner to Ms. Nauni, Ms. Severs, and Ms. Williams. *Id.* at 43. The State was confident that the "circumstances surrounding said interview and statements provide a sufficient indicia of reliability so as to render them inherently trustworthy," and further informed the court that the child "will testify and or be available to testify at the trial of this matter." [3] *Id.* The State requested that the court "set a hearing to determine whether or not the above referenced statements will be admissible pursuant to 12 O.S. § 2803.1 at the time of trial . . . ." [4] *Id.* at 44.

A hearing on the motions began on October 22, 2014, and was continued to October 27, 2014. [Doc. 9-2]. Ms. Nauni, Ms. Severs, Ms. Mallinson, and Ms. Williams testified in court, and a copy of the child's forensic interview (DVD - State's Exhibit 1) was provided to the trial judge. In sum, Ms. Nauni testified about the change in R.S.'s behavior during the exact time of her abuse, and confirmed the same story and details surrounding R.S.'s disclosure of the abuse to Ms. Williams. [Doc. 9-2 at 11-21]. Ms. Severs testified that, even after being told about the abuse by Ms. Williams and Ms. Nauni, she did not bring it up with R.S. or discuss what was said, and that the child brought it up and independently provided the same description of abuse. *Id.* at 26-37. Ms. Mallinson testified as to her credentials regarding forensic interviewing of children, discussed her training, and described the "RATAC" protocol for interviewing children, which she utilized when interviewing R.S. *Id.* at 43-50. Ms. Williams testified to the substantial behavioral changes in R.S. during the time that the child said she was abused, and testified to the circumstances under which R.S. disclosed the abuse and details of what was said. *Id.* at 60-71.

At the end of the hearing on October 27th, the prosecutor reminded the judge that defense counsel's motion in limine requested the court to rule that the child was not a competent witness

---

[3]     If a child is "unavailable" to testify, then § 2803.1(A)(2)(b) provides that "such statement may be admitted only if there is corroborative evidence of the act."

[4]     When determining whether hearsay statements made by a child witness in child sexual abuse cases are sufficiently reliable, an Oklahoma trial court "may consider, among other things," the factors identified by the Supreme Court in *Idaho v. Wright*, 497 U.S. 805, 821-22 (1990) ("spontaneity and consistent repetition," "mental state of the declarant," "use of terminology unexpected of a child of similar age," and "lack of motive to fabricate"). *See* 12 O.S.2011, § 2803.1(A)(1).

to testify. *Id*. at 78. The Honorable Lawrence W. Parish then posed the following question to defense counsel: "Well, I think before I can make a ruling on that, Mr. Allen, wouldn't I need to review the video?" *Id*. Mr. Allen agreed, and asked the court to review "the video and the transcript of preliminary hearing." *Id*. The prosecutor then provided caselaw to the trial judge, explaining that "two different victims [within the caselaw] were found competent where it was established [that] they knew the difference between a truth and a lie." *Id*. at 78-79.

The court took additional time to review the preliminary hearing transcript and forensic interview of R.S. In the preliminary hearing transcript, R.S. testified in detail about Petitioner molesting her, where it happened, when it happened, who was present, and the exact sleeping arrangements in the bedroom. [Doc. 9-1 at 10-48]. In the forensic interview of R.S., the child provided the same details and explanations for how, when, and where she was molested by Petitioner. [DVD - State's Exhibit 1 at 9:45-10:38, 16:00-22:00]. On October 29, 2014, Judge Parish granted the State's motion to admit prior statements of child witnesses [sic] into evidence, and denied Petitioner's motion in limine. [Doc. 9-7 at 55]. Petitioner now claims, as he did on appeal, that the trial court erred in admitting the hearsay statements without making a determination of reliability as required by *Oklahoma*'s child-hearsay law, and that R.S. was not a competent witness.

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "Federal habeas review is not available to correct state law evidentiary errors; rather it is limited to violations of constitutional rights." *Smallwood v. Gibson,* 191 F.3d 1257, 1275 (10th Cir. 1999); *see also Ochoa v. Workman*, 669 F.3d 1130, 1144 (10th Cir. 2012). "In federal habeas, we review state court evidentiary rulings to determine whether the error was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." *Hooker v. Mullin,* 293 F.3d 1232, 1238 (10th Cir. 2002) (quoting *Williamson v. Ward,* 110 F.3d 1508, 1522 (10th Cir. 1997)); *see also Bullock v. Carver*, 297 F.3d 1036, 1055 (10th Cir. 2002).

A claim similar to Petitioner's Ground I was asserted by another state prisoner in *Hamburger v. Allbaugh*, Case No. 16-6281, 679 Fed.Appx. 665 (10th Cir. Feb. 14, 2017)

(unpublished).[5] Hamburger was convicted in Oklahoma state court of lewd acts with a child under twelve. The OCCA affirmed his conviction, and Hamburger filed a § 2254 petition in federal district court, arguing in part that the trial court improperly admitted a recording of a forensic interview of the victim. The Circuit denied a Certificate of Appealability and dismissed the appeal, and provided the following guidance regarding the state law claim:

> To the extent that this argument is based on an alleged violation of Okla. Stat. tit. 12, § 2803.1, which requires a finding of reliability of child victim statements prior to admission, such a claim is not cognizable under § 2254. See *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law."). Instead, we look only to whether a claimed evidentiary error was "so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." *Revilla v. Gibson*, 283 F.3d 1203, 1212 (10th Cir. 2002) (quotation and alteration omitted).
>
> The Supreme Court has identified several factors relevant in determining whether a child victim's interview is sufficiently reliable. *Idaho v. Wright*, 497 U.S. 805, 821-22, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990) (identifying "spontaneity and consistent repetition," "mental state of the declarant," "use of terminology unexpected of a child of similar age," and "lack of motive to fabricate") abrogated on other grounds by *Crawford v. Washington*, 541 U.S. 36, 68-69, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The OCCA reasonably weighed these factors in concluding the interview was admissible. Hamburger complains that the interviewer did not specifically discuss the difference between truth and lies with the victim. The interviewer testified that although some jurisdictions prefer such a discussion, it is not required by protocol. Hamburger does not direct us to any clearly established federal law indicating that this factor alone renders a statement unreliable. Accordingly, his claim fails.

*Hamburger*, 679 Fed.Appx. at 667.

The Circuit rejected another similar claim in *Durbin v. Province*, Case No. 11-7028, 448 Fed.Appx. 785 (10th Cir. Aug. 25, 2011) (unpublished). In that case, although the Oklahoma trial court had conducted an in camera hearing before one witness testified, Durbin complained that the trial court did not properly explain why the child hearsay statements were reliable. *Id*. at 787. The

---

[5] A court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. *See* 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").

Circuit denied Durbin's request for a Certificate of Appealability and dismissed the appeal, explaining as follows:

> Mr. Durbin alleges that he was denied a fair trial because the trial court admitted hearsay statements from prosecution witnesses without first conducting a hearing as required by Okla. Stat. tit. 12 § 2803.1 to determine that such testimony was reliable. Specifically, Mr. Durbin objects to the trial court's failure to . . . explain its decision to admit the testimony of Wyndel Goodin after holding a hearing before he testified.

> Because this is an issue of state evidentiary law, we review only to ensure that the state court's rulings did not violate the Constitution, laws, or treaties of the United States. *Estelle v. McGuire,* 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). It is not the responsibility of a federal habeas court to cure errors from the state court concerning state law. *Id.* at 67–68, 112 S.Ct. 475. We will only consider state law evidentiary questions on habeas "if the alleged error was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." *Revilla v. Gibson,* 283 F.3d 1203, 1212 (10th Cir.2002) (quotations omitted), *cert. denied* 537 U.S. 1021, 123 S.Ct. 541, 154 L.Ed.2d 430 (2002).

*Durbin*, 448 Fed.Appx. at 787 (footnote omitted). The Circuit ultimately agreed with the district court's magistrate judge, opining "that because Mr. Goodin's hearsay statements largely corroborated the testimony of the victim, the trial court's failure to explain the basis for reliability did not render Mr. Durbin's trial fundamentally unfair." *Id.*

As noted above, federal habeas review is not available to correct state law evidentiary errors, and the Tenth Circuit has indicated that a trial court's "failure to explain the basis for reliability" of a child's statements as contemplated under 12 O.S. § 2803.1 does not by itself constitute a due process violation. *See Durbin*, 448 Fed.Appx. at 787; *see also Gilson v. Sirmons*, Case No. CIV-01-1311-C, 2006 WL 2320682, *28 (W.D. Okla. Aug. 9, 2006) (holding that the OCCA's findings as to whether children were competent to testify were "based on factual determinations and matters of state evidentiary law").[6] Further, it should come as no surprise that the trial court denied Petitioner's motion in limine, which was based upon a small portion of the child's testimony at the preliminary hearing. [Doc. 9-1 at 33-34].

---

[6] "[D]istrict court opinions have persuasive value only and are not binding as a matter of law." *United States v. Worthon,* 520 F.3d 1173, 1179–80 (10th Cir. 2008).

At trial, R.S. asked defense counsel to rephrase his question about the princess and the frog and Belle, defense counsel complied, and the child clearly denied those stories really happened. [Doc. 9-4 at 108]. The child promised to tell the truth, knew the difference between a truth and a lie, and knew that it is wrong to tell a lie. [Doc. 9-4 at 82, 115]. The child's testimony about the sexual abuse, like before, was clear and concise, she was effectively cross-examined by defense counsel, and Petitioner has failed to show that the child's testimony was inconsistent with other statements made by the child to the witnesses. The testimony of R.S. was corroborated by the testimony of Ms. Nauni, Ms. Severs, Ms. Mallinson, and Ms. Williams. The observed behavior of R.S. before, during, and following the alleged time of abuse, and testimony regarding the child's lack of desire to spend time at her beloved grandmother's house during the alleged time of abuse, reinforced the child's testimony. Petitioner was not denied a fundamentally fair trial as a result of the trial court's admission of the complained of evidence.

Petitioner fails to show that the OCCA's rejection of this claim was contrary to, or an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts. Petitioner's Ground I is denied.

**Ground II: Petitioner was fundamentally denied a fair trial by the admission of prejudicial, cumulative evidence and improper bolstering.**

Petitioner next claims that the Fifth, Sixth and Fourteenth Amendments guarantee a criminal defendant "due process and a fundamentally fair trial," and that relevant evidence may be excluded to protect these rights "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, needless presentation of cumulative evidence, or unfair and harmful surprise." [Doc. 1 at 11]. Initially, he complains that the State used the video of the child's forensic interview (DVD - State's Exhibit 1), along with the trial testimony of the child, "to present its principal witness twice." *Id*. He then argues that "[d]uring the trial in this case at bar, R.S. testified, recounting the allegations of sexual abuse, after the State had already presented the allegations through the testimony of Jolanda Williams, Randi Nauni, Precious Severs, and played the recording of the forensic interview to the jury." *Id*. at 12.

Petitioner essentially claims he should be granted a new trial because "[p]resenting the allegations multiple times was cumulative and more prejudicial than probative." *Id.*

In response, Respondent notes that Petitioner did not raise this objection at trial and that, in his direct appeal brief, he simply "made a fleeting reference to the due process clause of the United States Constitution." [Doc. 8 at 18-19]. Respondent also directs the court's attention to cases such as *Parker v. Scott*, 394 F.3d 1302 (10th Cir. 2005) and *Folks v. Mullin*, Case No. 09-CV-786-GKF-TLW, 2013 WL 162337 (N.D. Okla. Jan. 15, 2013) (unpublished), explaining that "the appropriate inquiry upon review in a federal habeas proceeding with regard to state law evidentiary issues is whether the admission of the evidence rendered the petitioner's trial fundamentally unfair," and that "Petitioner's Ground II must be denied." *Id.* at 19-20, 22.

The OCCA rejected Petitioner's claim:

> Proposition Two claims that the trial court erred by admitting child hearsay evidence and other testimony that was unduly cumulative and improper bolstering. Appellant failed to timely object on these grounds at trial, waiving all but plain error, as defined above. We find no error, and thus no plain error, in the admission of the challenged evidence. *Folks v. State*, 2008 OK CR 29, ¶ 14, 207 P.3d 379, 383. Proposition Two is denied.

*Taylor*, slip op. at 2-3. [Doc. 8-3 at 2-3].

The claims in Petitioner's Ground II raise no federal constitutional issue and are not cognizable in this habeas corpus proceeding. A federal habeas court has no authority to review a state court's interpretation or application of its own state laws. *See Bradshaw v. Richey,* 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law . . . binds a federal court sitting in habeas."). And to the extent his claims may implicate constitutional rights, Petitioner has failed to demonstrate that his trial was rendered fundamentally unfair.

In *Parker v. Scott*, 394 F.3d 1302, 1309 (10th Cir. 2005), a state prisoner claimed the trial court erred when it allowed testimony from three witnesses "that impermissibly bolstered, or 'vouched' for," a child victim's credibility. Parker, like Petitioner, had been sentenced to life imprisonment after an Oklahoma state court jury found him guilty of one count of sexual abuse of a child. *Id.* at 1306. The Tenth Circuit reviewed the testimony of the witnesses and rejected Parker's due process claim:

In sum, we cannot conclude, even taking these witnesses' testimonies together, that Parker's due process rights were violated. Although the testimony given by these three witnesses arguably shows that they believed sexual abuse had occurred, in context the testimonies do not fatally undercut the jury's determination of credibility in a case where both the child victim and the accused testified and were subject to extensive cross-examination. Every witness called by one side will to some extent reinforce each other's testimonies if the testimony is consistent and credible. The jury was able to weigh all of the testimony against the child's trial testimony. Given AEDPA's deferential standard of review, the OCCA's conclusion that Parker's due process rights had not been violated by the trial court's admission of this testimony, in the context of the entire trial, is a reasonable application of Supreme Court precedent.

*Parker*, 394 F.3d at 1314.

Petitioner complains that the admission of R.S.'s testimony and the video of the child's forensic interview was error, but such claim alleges an error of state law, and Petitioner has failed to show that the admission of R.S.'s testimony and the video of her forensic interview denied him a fundamentally fair trial. *See Folks v. Mullin*, Case No. 09-CV-786-GKF-TLW, 2013 WL 162337 at *3-4 (N.D. Okla. Jan. 15, 2013) (unpublished).

Additionally, Ms. Williams, Ms. Nauni, and Ms. Severs testified about their own individual experiences with R.S. regarding the sexual abuse allegations, and as noted in *Parker*, the testimony did not impermissibly bolster the child's credibility, thereby rendering Petitioner's trial fundamentally unfair. Ms. Williams, Ms. Nauni, and Ms. Severs, along with R.S. and Petitioner, testified and were subject to cross-examination, and the jury was instructed to determine the weight and credibility to give to the witnesses' testimony.[7]

Petitioner's Ground II is not cognizable in this federal habeas corpus proceeding, and Petitioner has not shown that his trial was rendered fundamentally unfair. Habeas corpus relief on Ground II must be denied.

---

[7] *See* Jury Instruction No. 8, "General Closing Charge – Credibility of Witnesses." [Doc. 9-7 at 90].

**Ground III: The trial court erred by admitting propensity evidence.**

Petitioner alleges in Ground III that the trial court erred by admitting propensity evidence, or more particularly, testimony from the child regarding allegations of child molestation that occurred in a trailer in another county. [Doc. 1 at 12-13]. Citing 12 O.S.Supp.2008, § 2414(B), Petitioner argues that the State is required to "disclose the evidence, to the defendant, including statements of witnesses or a summary of the substance of any testimony that is expected to be offered, at least fifteen (15) days before the scheduled date of trial." *Id*. at 13. Petitioner complains that the State "elicited testimony from R.S. that she was sexually abused in a house and then in a trailer," and that it was "an abuse of discretion for the trial court to allow the State to elicit the testimony . . . when the State had not disclosed to the defense their intent to offer such evidence 15 days before trial as required by statute." *Id*. He notes that defense counsel "did not object to the testimony regarding the trailer," and that the State informed the jury during closing argument that "[t]he second incident didn't occur in Okfuskee County so that's not before you here today." [Doc. 1 at 13; Doc. 9-5 at 40]. Petitioner then concludes that he is "entitled to a [n]ew [t]rial under the 5th, 6th, and [14th] Amendments to the U.S. Constitution." [Doc. 1 at 13].

Relying upon *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991), Respondent contends once again that Petitioner is alleging an error of state law and that a federal court conducting habeas review does not grant habeas relief for errors of state law. [Doc. 8 at 23]. Respondent also sets forth the following argument:

> As the State argued on direct appeal, Petitioner's argument that the State failed to provide notice fifteen (15) days before trial in accordance with Okla. Stat. tit. 22, § 2414(B) is belied by the State's Witness and Exhibit List filed on October 16, 2014, eighteen (18) days prior to trial. In the notice, the State included R.S.'s testimony and the following description:
>
> > The State of Oklahoma anticipates that this witness will testify in accordance with the testimony that she gave at the preliminary hearing of this matter, which was conducted on or about the 22nd day of May, 2014 an [sic] in accordance with the interview that she gave at the at the [sic] Unzer Center in Shawnee, OK on the 17th of January, 2014. (Exhibit 8, p. 45-46).
>
> During the preliminary hearing, R.S. repeatedly testified she was molested by Petitioner "[a]t her [Ms. Taylor's] old house and her new house." (Exhibit 4, p. 13).

R.S. testified Petitioner molested her on more than one night (Exhibit 4, p. 16). R.S. specifically testified to the abuse by the Petitioner in the trailer in Wetumka, not just the house in Okemah (Exhibit 4, pp. 13, 18-19). R.S. went into the same detail about the abuse in the trailer during the preliminary hearing as she did at trial (Exhibit 4, pp. 24-28; Exhibit 6, Vol. II, pp. 97-100).

[Doc. 8 at 24-25]. In summary, Respondent contends that Petitioner has "failed to show he received inadequate notice about the propensity evidence under Section 2414(B), and that he was denied a fundamentally fair trial." *Id*. at 25. Respondent also argues that Petitioner has failed to show the OCCA's decision was based on an unreasonable determination of the facts in light of the State court record. *Id*.

The OCCA found no merit in Petitioner's claim:

In Proposition Three, Appellant contends the trial court erroneously admitted sexual propensity evidence without the fifteen (15) day notice required by 12 O.S.2011, § 2414. The State points out that its discovery notice directly referenced earlier testimony and statements detailing acts of molestation at different times, in two different locations. Such evidence is generally admissible to show propensity to commit the charged offense. *Horn v. State*, 2009 OK CR 7, ¶ 15, 204 P.3d 777, 781. Appellant has not shown inadequate notice of the State's intent to present this evidence, or any prejudice resulting from the alleged lack of notice. Proposition Three is denied.

*Taylor*, slip op. at 3. [Doc. 8-3 at 3].

In *James v. Martin*, Case No. 14-5001, 567 Fed.Appx. 594, 597 (10th Cir. May 28, 2014) (unpublished), the Circuit noted that 12 O.S.2011 § 2414 is patterned after Federal Rule of Evidence 414. Prior thereto, in *United States v. Castillo*, 140 F.3d 874, 883 (10th Cir. 1998), the Circuit held that "Rule 414 on its face does not violate the constitutional guarantee of due process," and "also does not violate the Constitution's promise of equal protection under the law." The Circuit explained that "[t]here are plausible reasons for the enactment of Rule 414," and that "[t]he government has a particular need for corroborating evidence in cases of sexual abuse of a child because of the highly secretive nature of these sex crimes and because often the only available proof is the child's testimony." *Id.*

In the instant case, R.S. testified, during the preliminary hearing and trial, that Petitioner first molested her while she was staying the night with her grandmother in the Okemah house.

R.S. was molested while her grandmother was sleeping. In addition, during the preliminary hearing and trial, the child testified that Petitioner subsequently molested her while she was staying overnight with her grandmother in the Wetumka trailer. Petitioner later testified that he had moved with Ms. Taylor from the house in Okemah, a town in Okfuskee County, to a trailer in Wetumka, a town in Hughes County. Petitioner also acknowledged knowing what he was charged with but denied ever touching R.S. in that manner. The prosecutor informed the jury during closing argument that "[t]he second incident didn't occur in Okfuskee County so that's not before you here today." [Doc. 9-5 at 40].

The OCCA noted that the State's discovery notice, filed 18 days prior to the trial, had referenced the child's earlier testimony and statements. The OCCA explained that certain evidence, such as testimony regarding acts of molestation at different times and in different locations, is generally admissible to show propensity to commit the charged offense. The court agrees, and in the case at hand, Petitioner has not shown inadequate notice of the State's intent to present this evidence, or any prejudice resulting from the alleged lack of notice. The child's testimony about the molestation in the Okemah residence provided ample evidence from which the jury could convict Petitioner. The court is not persuaded that the jury concluded Petitioner was guilty simply based on evidence of later abuse.

The Supreme Court has not issued a decision that calls into question the constitutionality of 12 O.S.2011 § 2414, and the record does not reflect the evidence of later abuse in this case was "so prejudicial in the context of the proceedings as a whole that [the defendant] was deprived of the fundamental fairness essential to the concept of due process." *Castillo*, 140 F.3d at 883 (citation omitted). Ground III is denied.


**Ground IV: Petitioner was denied a fair trial due to prosecutorial misconduct.**

In Ground IV, Petitioner sets forth allegations of prosecutorial misconduct, insisting that he was denied a fair trial. [Doc. 1 at 14]. He first claims the State "prejudiced the jury against [Petitioner] by vouching for the credibility of R.S.," explaining that "[i]t is pure fundamental error for the State to elicit opinion evidence that the complaining witness is telling the truth." *Id*. In

particular, he argues that the State vouched for the child's credibility by eliciting testimony from Ms. Taylor regarding the child's sleeping arrangements. *Id.* He notes that defense counsel objected to the State making Ms. Taylor "a human lie detector," and that after the court overruled the objection, the State repeatedly asked Ms. Taylor if she had previously stated (in a meeting prior to trial) that "[R.S.] wouldn't lie" about Petitioner sleeping on the side of the bed closest to the child. *Id.* at 14-15. Next, Petitioner complains that the State began its closing argument by invoking sympathy for the child, more specifically referring to a portion of the following statement from the prosecutor: " . . . I sat there and I thought and thought about what I could possibly come in here and say to you all today to convince you to believe the word of a <u>small, timid 7-year-old girl</u> over the word of a grown man." [Doc. 1 at 15; Doc. 9-5 at 4]. He also complains about other comments made by the prosecutor, arguing that the "prosecution vouched for R.S.'s credibility by repeatedly calling [Ms. Taylor] a liar," that the State "reiterated R.S. was taught not to lie and knew the consequences for lying," and that the State "juxtaposed their argument that R.S. was not lying with an argument that Mr. Taylor had 'every reason in the world not to tell the truth.'" [Doc. 1 at 16-17].

The OCCA rejected this claim:

> Appellant argues in Proposition Four that prosecutorial misconduct denied him a fair trial. Reviewing both the preserved instances of alleged misconduct, and those waived by counsel's failure to timely object for plain error as defined above, we find the prosecutor's alleged misconduct did not render the trial fundamentally unfair, such that the jury's verdict is unreliable. *DeRosa v. State*, 2004 OK CR 19, ¶ 53, 89 P.3d 1124, 1145. Proposition Four therefore requires no relief.

*Taylor*, slip op. at 3. [Doc. 8-3 at 3].

The OCCA's decision was not unreasonable. "Generally, improper prosecutorial remarks will not warrant federal habeas relief unless the remark 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Gipson v. Jordan*, 376 F.3d 1193, 1197 (10th Cir. 2004) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright,* 477 U.S. 168, 181 (1986) (internal quotation marks omitted). "The ultimate question is whether the jury was able to fairly judge the evidence in light of the prosecutors' conduct." *Bland v. Sirmons*, 459 F.3d 999, 1024 (10th Cir. 2006).

The test for whether a defendant's trial was fundamentally unfair based on a prosecutor's comments proceeds in two steps: (1) the court first decides whether the prosecutor's comments were improper, and (2) if so, it examines their likely effect on the jury's verdict. The court thus must weigh any improper comments against the strength of the evidence against the defendant.

*United States v. Christy*, 916 F.3d 814, 824 (10th Cir. 2019) (citations omitted).

Petitioner first claims that he was denied a fair trial based on prosecutorial misconduct, complaining that the State was vouching for the child's credibility by eliciting testimony from Ms. Taylor. The court is not persuaded. Defense counsel objected to the State making Ms. Taylor "a human lie detector," but a prosecutor may cross-examine and impeach a witness regarding a prior inconsistent statement of that witness. The State was attempting to show that while Ms. Taylor may not remember Petitioner had slept on the outside of the bed, she did not disagree it was possible. The prosecutor's conduct was not improper.

The court further concludes that the jury was able to fairly judge the evidence in light of the prosecutors' conduct. Ms. Taylor, the child's grandmother, ultimately agreed that R.S. would not lie about whether Petitioner had slept on the same side of the bed as the child. [Doc. 9-4 at 51-54]. This testimony was consistent with the testimony of the child and Petitioner.

Following the grandmother's testimony, and on the same day of trial, the jury viewed the video of the child's forensic interview (DVD - State's Exhibit 1) in court. [Doc. 9-4 at 72-73]. The jury also watched the child and Petitioner testify. R.S. testified that she knew the difference between a truth and a lie, and her testimony in court matched her statements during the forensic interview. Furthermore, Petitioner agreed that on at least one occasion he had slept on the side of the bed closest to the child's pallet, and that Ms. Taylor had fallen asleep before Petitioner. *Id*. at 165. The alleged prosecutorial misconduct, when viewed in light of the trial as a whole, did not result in a fundamentally unfair proceeding, and the OCCA's decision on this issue was consistent with federal law.

Petitioner also complains that the State made improper closing arguments by invoking sympathy for the child and vouching for the credibility of R.S., and that the State referred to Ms.

Taylor and Petitioner as liars.[8]  That the prosecutor referred to the victim as a small, timid 7-year-old girl does not, in itself, invoke sympathy.[9]  Nor is the court convinced that the State improperly vouched for the credibility of the child,[10] or that referring to testimony as a lie is *per se* prosecutorial misconduct.[11]  But the prosecutorial comments made during closing, even if improper, when weighed against the strength of the evidence against the defendant, did not result in a fundamentally unfair proceeding.  *See United States v. Fleming,* 667 F.3d 1098, 1106 (10th Cir. 2011) ("We need not decide whether the prosecutor's comment . . . was improper, because even if it were, [the defendant] has not demonstrated that the statement violated his substantial rights.").

Petitioner has failed to show that the OCCA's rejection of his prosecutorial misconduct claim resulted in a decision that was contrary to, or an unreasonable application of, federal law. Petitioner has further failed to show that the OCCA's rejection of his claim was based on an unreasonable determination of the facts in light of the evidence presented in state court.  The court has reviewed the trial transcripts and considered the prosecutor's comments in light of the entire

---

[8]     The court is mindful of the state court's opening instruction to the jury.  The jury was instructed that "[i]t is your responsibility as jurors to determine the credibility of each witness and the weight to be given the testimony of the witness," and that "[i]t is the responsibility of the attorneys to present evidence, to examine and cross-examine witnesses and to argue the evidence.  No statement or argument of the attorneys are evidence."  [Doc. 9-3 at 175; Doc. 9-7 at 79].  The jury was also instructed that "[a]fter the evidence is completed, I will instruct you on the law applicable to the case.  The attorneys are then permitted closing arguments.  Closing arguments are not evidence and are permitted for the purpose – purposes of persuasion only."  [Doc. 9-3 at 177; Doc. 9-7 at 80].

[9]     Jury Instruction No. 8 provided in part that "[y]ou should not let sympathy, sentiment or prejudice enter into your deliberations, but should discharge your duties as jurors impartially, conscientiously, and faithfully under your oaths and return such verdict as the evidence warrants when measured by these instructions."  [Doc. 9-7 at 90].  "A jury is presumed to follow its instructions."  *Weeks v. Angelone,* 528 U.S. 225, 234 (2000).

[10]     "A prosecutor may comment on and draw reasonable inferences from evidence presented at trial."  *Thornburg v. Mullin,* 422 F.3d 1113, 1131 (10th Cir. 2005).  "Argument or evidence is impermissible vouching only if the jury could reasonably believe that the prosecutor is indicating a personal belief in the witness' credibility, either through explicit personal assurances of the witness' veracity or by implicitly indicating that information not presented to the jury supports the witness' testimony."  *United States v. Magallanez,* 408 F.3d 672, 680 (10th Cir. 2005) (quoting *United States v. Bowie,* 892 F.2d 1494, 1498 (10th Cir.1990)).

[11]     *See United States v. Robinson,* 978 F.2d 1554, 1567 (10th Cir. 1992); *see also United States v. Hernandez–Muniz,* 170 F.3d 1007, 1012 (10th Cir.1999) ("We have not, however, established that referring to testimony as a lie constitutes per se prosecutorial misconduct.").

proceeding.  The court agrees with the OCCA's determination that Petitioner was not deprived of a fair trial.  Ground IV is denied.

**Ground V:  The trial court erred by failing to order a presentence investigation.**

In Ground V, Petitioner requests a new trial, or resentencing, arguing that the trial court erred by failing to order a presentence investigation.  Petitioner directs the court's attention to another Oklahoma statute, 22 O.S.Supp.2002 § 982(A), claiming a presentence investigation should have been conducted prior to sentencing, and there "is no record of any presentence investigation (PSI) being ordered, conducted, or waived."  [Doc. 1 at 18].  Petitioner provides no explanation as to how a presentence investigation would have affected the outcome of his sentencing hearing.  The OCCA found no merit in this claim:

> Proposition Five argues that the trial court's failure to order a pre-sentence investigation requires remand for re-sentencing.  Neither party requested an investigation before sentencing, waiving all but plain error as defined above. Section 982(A) of Title 22 provides that upon conviction of a violent felony offense, the court "shall require a presentence investigation."  Section 982(E) provides that the required report "may be waived upon written waiver by the district attorney and the defendant" and approval by the court.

> Though the failure to comply with the statutory requirement of a written waiver was plainly in error, Appellant was sentenced by jury to life imprisonment; and he has not shown that the failure to conduct a pre-sentence investigation seriously affected the fairness, integrity, or public reputation of the outcome at formal sentencing.  *See Spuehler v. State*, 1985 OK CR 132, ¶ 15, 709 P.2d 202, 205 (finding pre-sentence investigation would have had no effect on trial court's pronouncement of life sentence imposed by jury).  Proposition Five is denied.

*Taylor*, slip op. at 3-4.  [Doc. 8-3 at 3-4].

Petitioner now states, without explanation, that the trial court's error has compromised his right to due process and equal protection under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.  This court is not persuaded.  The Supreme Court has recognized that, ". . . in noncapital cases, the established practice of individualized sentences rests not on constitutional commands, but on public policy enacted into statutes."  *Lockett v. Ohio,* 438 U.S. 586, 604-05 (1978).  In other words, the Constitution does not require a presentence investigation

prior to sentencing in a noncapital case.  *See Adams v. Dugger*, 850 F.2d 1495, 1500 (11th Cir. 1988); *see also Goseland v. Shelton*, 2002 WL 1880759 at *5 (D. Kan. Aug. 15, 2002).  Moreover, Petitioner has failed to demonstrate that the lack of a PSI has rendered his trial fundamentally unfair.  Petitioner's request for federal habeas relief in Ground V is denied.


**Ground VI:   Petitioner was prejudiced by ineffective assistance of counsel.**

Petitioner next claims he was denied the effective assistance of trial counsel.  [Doc. 1 at 19-23].  First, Petitioner claims defense counsel "failed to inquire of, challenge for cause, or use peremptory challenges to remove biased jurors."  *Id*. at 20.  Petitioner points to statements made by certain jurors during *voir dire*, suggesting the jurors were biased since they had experiences with crimes similar to the one charged or preconceived notions about punishment for such a crime. *Id*. at 20-21.  Next, he argues defense counsel was ineffective for failing to object to "propensity evidence through the testimony of R.S. during trial," alleging that the evidence of "another touching" in a trailer "should have raised an objection as the State did not disclose their intent to offer this evidence 15 days prior to trial."  *Id*. at 22.  Lastly, he claims counsel was ineffective for failing to object to statements made by the prosecutor during closing arguments, arguing that the State was attempting to invoke sympathy for R.S. by referring to the child as a "small, timid 7-year-old girl," that the State repeatedly called his wife "a liar," and that the State vouched for R.S. and had "indirectly" called Petitioner "a liar."  *Id*.  Respondent alleges the OCCA's decision denying this claim was consistent with Supreme Court law and was not an unreasonable determination of the facts.  [Doc. 8 at 41].

In denying the Petitioner's ineffectiveness of counsel claim, the OCCA concluded as follows:

> Appellant's Proposition Six alleges he was denied the effective assistance of trial counsel; specifically, by counsel's failure to (1) inquire, challenge for cause, or use peremptory challenges to remove biased jurors; and (2) to preserve Appellant's other claims of error by proper objections.  Reviewing this claim according to the deficient performance/prejudice standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064[,] 80 L.Ed.2d 674 (1984), no relief is warranted.  Counsel's allegedly unreasonable omissions neither individually nor cumulatively create a reasonable probability of a different outcome at trial.

Proposition Six is therefore denied. *Phillips v. State*, 1999 OK CR 38, ¶ 103, 989 P.2d 1017, 1043 (claim of ineffective counsel can be denied for lack of *Strickland* prejudice).

*Taylor*, slip op. at 4. [Doc. 8-3 at 4].

The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. To prevail on his claim of ineffective assistance of counsel, the defendant must prove deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficiency, the defendant must overcome the strong presumption that counsel's conduct fell within the wide range of professional conduct, including trial strategy. *Id*. at 689. To prove prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

The Supreme Court has provided additional guidance regarding the application of *Strickland* in habeas corpus proceedings:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington v. Richter*, 562 U.S. 86, 101 (2011) (emphasis in original). The Court further explained:

> Surmounting *Strickland's* high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's

assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*See Richter*, 562 U.S. at 105 (internal citations and quotation marks omitted).

Petitioner first claims defense counsel was ineffective for failing to "inquire of, challenge for cause, or use peremptory challenges to remove biased jurors," suggesting that certain jurors could not impartially consider the evidence based upon statements made during *voir dire*. [Doc. 1 at 20]. The court has carefully reviewed the transcript and is not persuaded. [Doc. 9-3 at 4-173]. The jurors affirmed that they could be impartial, and most notably, Defendant has not shown that any of the jurors "had such a fixed opinion that he or she could not judge impartially." *Hale v. Gibson,* 227 F.3d 1298, 1319 (10th Cir. 2000), *cert. denied,* 533 U.S. 957 (2001). Defendant has advanced no evidence to suggest that further inquiry during *voir dire* would have shown certain jurors were biased. And, like *Hale*, which involved a similar ineffective assistance of counsel claim, the undersigned notes there was no unequivocal statement by any juror that they were firmly convinced Defendant was guilty and could not set aside the opinion. *Id*. at 1320. In short, Petitioner has not established a *Strickland* violation. He has failed to show that he was prejudiced by defense counsel's failure to inquire of, challenge for cause, or exercise a peremptory challenge against, jurors who said they could be impartial.

Petitioner next claims counsel was ineffective for failing to object to the admission of propensity evidence, or more particularly, R.S.'s testimony regarding the other touching in the trailer. [Doc. 1 at 22]. Petitioner claims the evidence "should have raised an objection as the State did not disclose their intent to offer this evidence 15 days prior to trial." *Id*. As explained in Ground III above, however, the State's witness and exhibit list was filed on October 16, 2014, eighteen (18) days before trial. [Doc. 9-7 at 48]. The discovery notice referenced the child's

testimony at the preliminary hearing and her statements during the forensic interview. *Id*. The OCCA explained that certain evidence, such as testimony regarding acts of molestation at different times and in different locations, is generally admissible to show propensity to commit the charged offense, and the OCCA determined that Petitioner failed to show he had inadequate notice of the propensity evidence or was prejudiced by the admission of the evidence. [Doc. 8-3 at 3]. The OCCA further determined that no relief is warranted on the *Strickland* claim. *Id*. at 4.

To establish prejudice under *Strickland*, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In this case, the failure to object to the evidence of later abuse at the trailer neither individually nor cumulatively created a reasonable probability of a different outcome at trial. As noted in Ground III above, the child's testimony about the molestation in the Okemah house provided ample evidence from which the jury could convict Petitioner. Petitioner has failed to demonstrate prejudice under the second prong of the *Strickland* test.

Lastly, Petitioner claims counsel was ineffective for failing to object to allegations of prosecutorial misconduct. Petitioner is convinced that the State was attempting to invoke sympathy for R.S. by referring to the child as a "small, timid 7-year-old girl." [Doc. 1 at 22]. Petitioner also complains that "[d]efense counsel did not object when the State repeatedly called Rachel Taylor a liar," and that the "State's vouching for R.S. and indirectly calling Mr. Taylor a liar were also not met with an objection." *Id*. As noted in Ground IV above, the OCCA found the prosecutor's "alleged misconduct did not render the trial fundamentally unfair, such that the jury's verdict is unreliable." [Doc. 8-3 at 3]. And, in deciding Petitioner's *Strickland* claim, the OCCA found any omission did not "create a reasonable probability of a different outcome at trial." *Id*. at 4. This determination was not unreasonable.

Counsel's failure to object to the prosecutor's comments cannot be deemed prejudicial and does not constitute ineffective assistance of counsel. Petitioner cannot establish any reasonable probability that the outcome of his trial would have been any different if defense counsel would have objected to the prosecutor's comments. Petitioner is unable to satisfy the prejudice prong,

and Respondent correctly points out that "inquiry into counsel's deficient performance is not necessary." [Doc. 8 at 49]. "We need not analyze both the performance and prejudice prongs of the *Strickland* test if defendant fails to make a sufficient showing of one." *United States v. Hollis*, 552 F.3d 1191, 1194 (10th Cir. 2009) (internal quotation marks omitted).

After careful review, the court finds the OCCA's decision on Petitioner's claim of ineffective assistance of counsel was not contrary to, or an unreasonable application of *Strickland*, and the OCCA's decision was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Ground VI is denied.

**Ground VII: Cumulative errors deprived Petitioner of a fair trial.**

In Ground VII, Petitioner vaguely alleges that the cumulative effect of the errors listed in Grounds I through VI deprived him of a fair trial. [Doc. 1 at 23].

In response, Respondent argues that Petitioner is not entitled to habeas relief, noting that "[i]nsofar as Respondent has countered every allegation of error made by Petitioner with argument and citation of authority and has contended that none of these assignments of error warrant federal relief, there has been no accumulation of error which would justify reversal." [Doc. 8 at 50].

The OCCA also found no merit in this claim:

> Proposition Seven argues that cumulative error deprived Appellant of a fair trial. We found that any error in the trial court's failure to state more particularly the grounds for admitting child hearsay was harmless, and reached the same conclusion concerning the absence of a written waiver of pre-sentence investigation. We likewise conclude that these minor errors had no cumulative prejudicial effect warranting relief. Proposition Seven is denied.

*Taylor*, slip op. at 5. [Doc. 8-3 at 5].

"A cumulative-error analysis merely aggregates all the errors that individually have found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *Hanson v. Sherrod*, 797 F.3d 810, 852 (10th Cir. 2015) (quotation omitted). In the instant case,

R.S. testified in detail about Petitioner molesting her in Okemah (where it happened, when it happened, who was present, and the exact sleeping arrangements in the bedroom). The child's testimony was reinforced by the testimony of several witnesses, and provided ample evidence from which the jury could convict Petitioner. Petitioner has failed to show that any errors identified in Grounds I through VI, when considered in the aggregate, had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

Petitioner has failed to show that the OCCA's decision was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court, and the decision did not result in an unreasonable determination of the facts in light of the state court record. This ground for relief must be denied.

**Ground VIII: Petitioner's sentence is excessive.**

Petitioner alleges in Ground VIII that his life sentence is excessive and should be modified. [Doc. 1 at 24]. The OCCA denied relief on Petitioner's claim, finding as follows:

> Appellant's Proposition Eight argues the life sentence is excessive. This Court has consistently held that where the punishment is within the statutory limits, the sentence will not be modified unless, under all the facts and circumstances, it is so excessive as to shock the conscience of the Court. *Maxwell v. State*, 1989 OK CR 22, ¶ 12, 775 P.2d 818, 820. The sentence here does not shock the conscience. Proposition Eight is denied.

*Taylor*, slip op. at 5. [Doc. 8-3 at 5].

The OCCA's rejection of this claim was not an unreasonable application of federal law. Petitioner's sentence is not grossly disproportionate to the severity of the crime. *See Ewing v. California*, 538 U.S. 11, 21 (2003). Moreover, he has not shown that his sentence falls outside the state statutory limits. In *Dennis v. Poppel*, 222 F.3d 1245 (10th Cir. 2000), *cert. denied*, 534 U.S. 887 (2001), the Tenth Circuit provided the following guidance:

> We afford wide discretion to the state trial court's sentencing decision, and challenges to that decision are not generally constitutionally cognizable, unless it is

> shown the sentence imposed is outside the statutory limits or unauthorized by law. *See Haynes v. Butler*, 825 F.2d 921, 923–24 (5th Cir. 1987), *cert. denied*, 484 U.S. 1014 (1988); *see also Handley v. Page*, 398 F.2d 351, 352 (10th Cir. 1968). Generally, our review of a sentence ends once we determine the sentence is within the limitation set by statute. *See Vasquez v. Cooper*, 862 F.2d 250, 255 (10th Cir. 1988).

*Dennis*, 222 F.3d at 1258. Here, Petitioner's life sentence was within the statutory range of permissible punishment under Oklahoma law. A conviction of sexual abuse of a child under twelve (12) carries a maximum penalty of life imprisonment. 21 O.S.Supp.2011, § 843.5(F).

After careful consideration of the circumstances of this case, this court finds the OCCA's decision of this claim was not contrary to, or an unreasonable application of, Supreme Court law. Therefore, this claim is denied.

**Certificate of Appealability**

The court further finds Petitioner has failed to make a "substantial showing of the denial of a constitutional right," as required by 28 U.S.C. § 2253(c)(2). In addition, he has not "demonstrate[d] that reasonable jurists would find [this] court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Therefore, a certificate of appealability shall be denied.

ACCORDINGLY, Petitioner's petition for a writ of habeas corpus [Doc. 1] is DENIED, and a certificate of appealability is DENIED.

It is so ordered this 12th day of March, 2020.

_____
THE HONORABLE RONALD A. WHITE
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF OKLAHOMA